[No. S111585. July 12, 2004.]

GENOVEVA ROJAS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JULIE COFFIN et al., Real Parties in Interest.

408

## COUNSEL

Agnew & Brusavich, Bruce M. Brusavich, Leonor C. Gonzales, Vibhu Talwar; Lewis, Marenstein, Wicke & Sherwin, Thomas L. Hoegh; Esner & Chang, Andrew N. Chang and Stuart B. Esner for Petitioners.

Jeff Kichaven; Lascher & Lascher and Wendy Cole Lascher for Southern California Mediation Association as Amicus Curiae on behalf of Petitioners.

Greene, Broillet, Panish & Wheeler and Christine Spagnoli for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Watten, Discoe & Bassett, Watten, Discoe, Bassett & McMains, Robert C. Risbrough and Kathleen Barnett for Real Parties in Interest Julie Coffin and Richard Ehrlich.

Friedenthal, Cox & Herskovitz, Daniel R. Friedenthal, Mark H. Herskovitz, Carlos C. Cabral and Janette S. Bodenstein for Real Party in Interest Deco Construction Corporation.

Veatch, Carlson, Grogan & Nelson, Kevin H. Louth, Steven W. Sedach and Bernhard E. Bihr for Real Party in Interest GES Roofing.

Selman • Breitman, A. Scott Goldberg, Eldon S. Edson and Won M. Park for Real Party in Interest Haven Mechanical.

Poole & Shaffery, Charles W. Jenkins and Samuel L. Tolwin for Real Party in Interest Inland Water Proofing & Sheet Metal.

Ivan K. Stevenson for Law Office of Ivan K. Stevenson and Confidential Mediation & Dispute Resolution as Amici Curiae on behalf of Real Parties in Interest Julie Coffin, Richard Ehrlich and Deco Construction Corporation.

Dunn Koes, Pamela E. Dunn and Daniel J. Koes for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Real Parties in Interest.

James R. Madison and David Finch for the California Dispute Resolution Council as Amicus Curiae on behalf of Real Parties in Interest.

Law and Mediation Offices of Elizabeth E. Bader and Elizabeth E. Bader for Ron Kelly and Elizabeth E. Bader as Amici Curiae.

## OPINION

**CHIN, J.**—We granted review in this case to consider the scope of Evidence Code section 1119, subdivision (b),[1] which provides: "No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery . . . ." In a divided decision, a majority of the Court of Appeal held that application of this statute is governed by the same principles that govern application of the work product privilege under Code of Civil Procedure section 2018. Applying those principles, the majority classified raw test data, photographs, and witness statements as nonderivative material that is not protected. By contrast, the majority held, material reflecting *only* an attorney's impressions, conclusions, opinions, or legal research or theories is absolutely protected. Finally, the majority held that derivative materials—amalgamations of factual information and attorney thoughts, impressions, and conclusions—are qualifiedly protected; they are discoverable only upon a showing of good cause, which involves a balancing of the need for the materials and the purposes served by mediation confidentiality.

We conclude that the Court of Appeal's interpretation of section 1119, subdivision (b), is contrary to both the statutory language and the Legislature's intent. We therefore reverse the Court of Appeal's judgment.

### FACTUAL BACKGROUND

Real party in interest Julie Coffin, trustee of the 1979 Ehrlich Investment Trust (Coffin), is the owner of an apartment complex in Los Angeles that includes three buildings and a total of 192 units. In 1996, Coffin sued the contractors and subcontractors who built the complex—including real party in interest Deco Construction Corporation (Deco)—alleging that water leakage due to construction defects had produced toxic molds and other microbes on the property (the underlying action). In July 1998, the court, with the parties' consent, issued a comprehensive case management order (CMO), which provided in part: "Evidence of anything said or any admission made by attorneys, parties, principals, consultants, or others in the course of any

---

[1] Unless otherwise indicated, all further statutory references are to the Evidence Code.

'mediation proceeding' . . . and any document prepared for the purpose of, or in the course of, or pursuant to any mediation proceeding shall be deemed privileged pursuant to Evidence Code § 1119 and shall not be admissible as evidence at trial or for any purpose prior to trial."

In April 1997, Coffin prepared a preliminary defect list identifying structural defects and mold infestation. In April 1998, she began air testing. In late 1998, one of the buildings at the complex was closed for abatement, including demolition and replacement of drywall and ceilings, application of antimicrobial agents, and plumbing repairs.

In April 1999, the litigation settled as a result of mediation. The settlement agreement stated in part that, "throughout this resolution of the matter, consultants provided defect reports, repair reports, and photographs for informational purpose which are protected by the Case Management Order and Evidence Code §§ 1119 and 1152, and it is hereby agreed that such materials and information contained therein shall not be published or disclosed in any way without the prior consent of plaintiff or by court order."

In August 1999, several hundred tenants of the apartment complex (Tenants) filed the action now before us against Deco, Coffin, Richard Ehrlich—as Coffin's agent and employee—and numerous other entities that participated in development or construction of the complex. Tenants alleged that defective construction had allowed water to circulate and microbes to infest the complex, causing numerous health problems. They also alleged that all defendants had conspired to conceal the defects and that they (Tenants) had not become aware of the defects until April 1999.

In November 1999, Tenants served deposition subpoenas on attorneys and experts/consultants involved in the underlying action, demanding production of each deponent's "entire files" relating to that action. Coffin and Ehrlich moved to quash the subpoenas and sought a protective order. Eventually, the court ordered the subpoenas withdrawn and directed Tenants to file a motion to compel, production. Tenants subsequently filed a motion to compel, requesting production of, among other things, the following: (1) discovery exchanged between the parties to the underlying litigation; (2) physical evidence of the condition of the buildings, including photographs, videotapes, test samples and reports, and any physical evidence that was removed from the buildings and saved, such as drywall, plumbing, and framing; (3) writings describing the buildings, including written notes of observations made during inspections and witness interviews; and (4) writings evidencing experts' opinions and conclusions, whether or not communicated to the defendants in the underlying action. Coffin, Ehrlich, and Deco opposed the motion, arguing in part that all of the requested documents were undiscoverable under section 1119 because they were prepared for the mediation in the underlying action.

The motion was heard by Judge Charles McCoy. He ruled that whether a particular document prepared in the underlying action was discoverable depended in part on whether it was prepared before or after July 2, 1998, when the CMO was signed and the mediation process began. Judge McCoy found that, as section 1119 provides, documents prepared after that date "for the purpose of, in the course of, or pursuant to" the mediation were undiscoverable. Documents prepared before that date were discoverable if they were "subject to the discovery process prior to entry of the CMO" and "were not prepared for mediation purposes." Judge McCoy ordered the parties to submit the documents in question for in camera review. Defendants complied with this order by submitting the compilations they had prepared for the mediation in the underlying action. After in camera review, Judge McCoy ruled that the compilations—including photographs—were undiscoverable under section 1119. However, he specified that his ruling applied only to "the documents taken together as a compilation for mediation purposes," and that he was not deciding whether the individual documents in the compilations, which "were not submitted . . . separately," were discoverable. Tenants did not challenge this ruling.

After the case was reassigned to Judge Anthony Mohr, another discovery dispute arose when Tenants served interrogatories on another defendant— Alper Development, Inc. (Alper)—seeking information regarding the mediation in the underlying action. Alper objected to the discovery request, based in part on section 1119. On August 16, 2001, at the hearing on Tenants' subsequent motion to compel, Judge Mohr ruled that Alper did not have to disclose information contained in the documents Judge McCoy had already held to be undiscoverable under section 1119. Judge Mohr also reaffirmed Judge McCoy's ruling that the mediation compilations were undiscoverable. However, Judge Mohr indicated that the individual photographs contained in the compilations were discoverable and would have to be produced if requested.

After this ruling, Tenants served another request for production of all photographs (and negatives) and videotapes taken or received during the underlying action, "all recorded statements" of former or current tenants obtained in that action, all "results" from destructive testing during that action, and all "raw data" collected during that action from "air sampling for mold spores," "bulk sampling of mold spores," and "destructive testing." When Coffin and Ehrlich objected to the request, Tenants moved to compel production, arguing that Judge Mohr had ruled only that the mediation compilations were not discoverable and had stated that the individual photographs in those compilations were discoverable if requested. In opposition to the motion, Coffin and Ehrlich asserted that, under section 1119, the requested documents were not discoverable and that Judge McCoy had so held.

On March 7, 2002, Judge Mohr denied Tenants' motion. At the hearing on that date, Judge Mohr focused primarily on the requested photographs, explaining: "The plaintiffs say that they need these photos and there's no other evidence of the conditions as they were at that time and in those places, and [defendants are] saying these photographs were created for mediation purposes. They are documents under Evidence Code section 250. They're clearly protected by the mediation privilege. Judge McCoy so found. They were created pursuant to [the CMO] in the earlier case . . . . There's no question they're covered."[2] Judge Mohr also concluded that principles governing discovery of evidence subject to a qualified work product privilege do not govern evidence "covered by the mediation privilege." Finally, Judge Mohr remarked: "This is a very difficult decision . . . because it could well be that there's no other way for the plaintiffs to get this particular material. On the other hand, the mediation privilege is an important one, and if courts start dispensing with it by using the . . . test [governing the work product privilege], . . . you may have people less willing to mediate."

Tenants then sought a writ of mandate in the Court of Appeal. In a split decision, a majority of the Court of Appeal granted relief, concluding that section 1119 does "not protect pure evidence," but protects only "the substance of mediation, i.e., the negotiations, communications, admissions, and discussions designed to reach a resolution of the dispute at hand." As noted above, according to the majority, section 1119 protects mediation materials "in the same manner as the work product doctrine." Applying work product principles, the majority classified the "raw test data, photographs, and witness statements" as "non-derivative" material that is " not protected by section 1119" and is therefore discoverable. By contrast, the majority held, "material solely reflecting an attorney's ' "impressions, conclusions, opinions, or legal research or theories," ' is entitled to absolute protection." Finally, the majority held, "derivative material"—that is, "amalgamation[s] of factual information and attorney thoughts, impressions, [and] conclusions," such as "charts and diagrams, audit reports, compilations of entries in documents, records and other databases, appraisals, opinions, and reports of experts employed as nontestifying consultants"—is qualifiedly protected; it is "discoverable only upon a showing of good cause, which requires a determination of the need for the materials balanced against the benefit to the mediation privilege obtained by protecting those materials from disclosure." Moreover, the majority held, purely factual information included in derivative material—that is, photographs and test data—must, if possible, be removed and produced. The majority thus ordered issuance of a peremptory writ of

---

[2] As to his comments at the prior hearing regarding production of the photographs, Judge Mohr said to Tenants' counsel: "Well, you had me spouting off on the bench. I'm not sure that's an order. You just had me saying, 'Hey, they're individual pictures. Turn them over.' I've done a lot of thinking since then."

mandate directing the trial court to vacate its order denying Tenants' motion to compel and to apply these principles during an in camera review of the requested documents.

In reaching its conclusion, the majority relied largely on section 1120, subdivision (a), which provides that "[e]vidence otherwise admissible or subject to discovery outside of a mediation . . . shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation . . . ." The majority reasoned that adopting the trial court's contrary analysis would "render section 1120 complete surplusage" and would "permit the parties to use mediation as a shield to hide evidence."

We then granted the petition for review filed by Coffin and Ehrlich. We also granted the petition for review filed by Deco, which had joined the answer Coffin and Ehrlich filed in the Court of Appeal in opposition to Tenant's writ petition.[3]

## DISCUSSION

As we recently explained, "[i]mplementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*).) Mediation is one of the alternatives the Legislature has sought to implement. The Legislature has expressly declared: "In appropriate cases mediation provides parties with a simplified and economical procedure for obtaining prompt and equitable resolution of their disputes and a greater opportunity to participate directly in resolving these disputes. Mediation may also assist to reduce the backlog of cases burdening the judicial system. It is in the public interest for mediation to be encouraged and used where appropriate by the courts." (Code Civ. Proc., § 1775, subd. (c).)

One of the fundamental ways the Legislature has sought to encourage mediation is by enacting several "mediation confidentiality provisions." (*Foxgate, supra,* 26 Cal.4th at p. 14.) As we have explained, "confidentiality is essential to effective mediation" because it "promote[s] 'a candid and informal exchange regarding events in the past . . . . This frank exchange is

---

[3] After we granted review, Tenants settled their claims against Coffin, Ehrlich, and Deco. However, no motion to dismiss review has been filed. Moreover, discovery of the requested information remains at issue in connection with production requests served on Coffin and Ehrlich by codefendants who have filed cross-claims. Given these circumstances, and the fact that the case "raises issues of continuing public importance," we exercise our discretion to retain jurisdiction. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes.' [Citations.]" (*Ibid.*) "To carry out the purpose of encouraging mediation by ensuring confidentiality, [our] statutory scheme . . . unqualifiedly bars disclosure of" specified communications and writings associated with a mediation "absent an express statutory exception." (*Id.* at p. 15.)

The particular confidentiality provision at issue here is section 1119, subdivision (b), which provides: "No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given." In turn, section 250 defines the term "writing" to "mean[] handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." By statute, "any writing that is inadmissible, protected from disclosure, and confidential under" the mediation confidentiality provisions "before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends." (§ 1126.)

█ The Court of Appeal's holding directly conflicts with the plain language of these provisions. As noted above, the Court of Appeal held that section 1119 never applies to photographs and witness statements. However, under section 1119, because both photographs and written witness statements qualify as "writing[s], as defined in [s]ection 250," if they are "prepared for the purpose of, in the course of, or pursuant to, a mediation," then they are not "admissible or subject to discovery, and [their] disclosure . . . shall not be compelled . . . ." The Court of Appeal also held that "raw test data" are never "protected by section 1119." Insofar as it was referring to actual physical samples collected at the apartment complex—either from the air or from destructive testing—the Court of Appeal was correct; such physical objects are not "writing[s], as defined in [s]ection 250." (§ 1119, subd. (b).) However, insofar as it was referring to recorded analyses of those samples—for example, reports describing the existence or amount of mold spores in a sample—the Court of Appeal erred; because such analyses are "writing[s], as

defined in [s]ection 250," under section 1119, if they were "prepared for the purpose of, in the course of, or pursuant to, a mediation," then they are not "admissible or subject to discovery, and [their] disclosure . . . shall not be compelled . . . ."[4]

██ Section 1120 does not, as the Court of Appeal held, support a contrary conclusion. As noted above, section 1120, subdivision (a), provides that "[e]vidence otherwise admissible or subject to discovery outside of a mediation . . . shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation . . . ." Read together, sections 1119 and 1120 establish that a writing—which qualifies as " '[e]vidence' " (§ 140)—is not protected "solely by reason of its introduction or use in a mediation" (§ 1120, subd. (a)), but is protected only if it was "prepared for the purpose of, in the course of, or pursuant to, a mediation." (§ 1119, subd. (b).) In other words, under section 1120, a party cannot secure protection for a writing—including a photograph, a witness statement, or an analysis of a test sample—that was not "prepared for the purpose of, in the course of, or pursuant to, a mediation" (§ 1119, subd. (b)) simply by using or introducing it in a mediation or even including it as part of a writing—such as a brief or a declaration or a consultant's report—that was "prepared for the purpose of, in the course of, or pursuant to, a mediation." (*Ibid.*) Contrary to the Court of Appeal's conclusion, this construction does not render section 1120 "surplusage" or permit parties "to use mediation as a shield to hide evidence." Rather, consistent with the Legislature's intent, it applies section 1120 as a "limit[]" on "the scope of [s]ection 1119" that "prevent[s] parties from using a mediation as a pretext to shield materials from disclosure."[5]

---

[4] In an amicus curiae brief, the Southern California Mediation Association (SCMA) argues that section 1119 does not even apply here because what occurred in the underlying action was not a mediation. SCMA bases its argument on the language of (1) the CMO, which stated that "[a]ll conferences and mediations are deemed to be mandatory settlement conferences of this court," and (2) the language of section 1117, subdivision (b)(2), which states that the mediation confidentiality provisions do not apply to "[a] settlement conference pursuant to Rule 222 of the California Rules of Court." We decline to address this issue because the parties have never raised it and neither the trial court nor the Court of Appeal addressed it; at all times, the parties in this case have assumed that a mediation took place in the underlying action.

[5] This conclusion is consistent with the construction of similar language in rule 408 of the Federal Rules of Evidence (28 U.S.C.), which provides in relevant part: "Evidence of conduct or statements made in compromise negotiations is . . . not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." As construed by the federal courts, the latter sentence "prevent[s] one from being able to 'immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation.' [Citation.] [It] does not [apply] where the document, or statement, would not have existed but for the negotiations, hence the negotiations are not being used as a device to thwart discovery by making existing documents unreachable." (*Ramada Dev. Co. v. Rauch* (5th Cir. 1981) 644 F.2d 1097, 1107.)

(Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2004 supp.) foll. § 1120, p. 153.)[6]

On the other hand, the Court of Appeal's construction renders subdivision (b) of section 1119 essentially useless. As noted above, the Court of Appeal held that section 1119 does "not protect pure evidence," but protects only "the substance of mediation, i.e., the negotiations, communications, admissions, and discussions designed to reach a resolution of the dispute at hand." However, this protection is afforded under subdivision (a) of section 1119, which provides: "No *evidence* of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery, and disclosure of the *evidence* shall not be compelled . . . ." (Italics added.) Because a "writing[]" constitutes "[e]vidence" (§ 140), any writing that discloses what the Court of Appeal characterized as "the substance of mediation"—"negotiations, communications, admissions, and discussions designed to reach a resolution of the dispute"—necessarily qualifies as "evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation," and is undiscoverable under subdivision (a) of section 1119. Thus, under the Court of Appeal's narrow statutory construction, subdivision (b) of section 1119 serves no purpose.

The Court of Appeal's holding is also inconsistent with the relevant legislative history. The Legislature passed the current mediation confidentiality provisions in 1997 at the recommendation of the California Law Revision Commission (Commission). (See Recommendation on Mediation Confidentiality (Jan. 1997) 26 Cal. Law Revision Com. Rep. (1996) p. 407.) An early draft of the proposed provisions, which the Commission circulated for comment, included a section stating that although "a communication, document, or any writing as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation" is confidential and protected, it "may be admitted or disclosed if . . . [¶] . . . [it] is an expert's analysis or report, it was prepared for the benefit of fewer than all the mediation participants, those participants expressly consent to its disclosure, and the communication, document, or writing does not disclose anything said or any admission made in the course of the mediation." (Cal. Law Revision Com., Tent. Recommendation on Mediation Confidentiality (May 1996) p. 14.)[7] The accompanying comment explained that this proposed

---

[6] "The official comments of the California Law Revision Commission on the various sections of the Evidence Code are declarative of the intent not only of the draft[ers] of the code but also of the legislators who subsequently enacted it. [Citation.]" (*People v. Williams* (1976) 16 Cal.3d 663, 667–668 [128 Cal.Rptr. 888, 547 P.2d 1000].)

[7] We grant the request of amici curiae Elizabeth Bader and Ron Kelly for judicial notice of the Commission's records regarding the confidentiality provisions here at issue. (See *Estate of Joseph* (1998) 17 Cal.4th 203, 210, fn. 1 [70 Cal.Rptr.2d 619, 949 P.2d 472].)

section "facilitates admissibility and disclosure of unilaterally prepared experts' reports, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion. Reports and analyses that necessarily disclose mediation communications may be admitted or disclosed only upon satisfying the general rule" requiring the express consent of all persons participating in the mediation. (Cal. Law Revision Com., Tent. Recommendation on Mediation Confidentiality, *supra*, at p. 14.)

The California State Bar's Committee on the Administration of Justice (CAJ) submitted comments "propos[ing] to replace" this provision with one stating: " 'A written statement otherwise admissible is admissible if it is not precluded by other rules of evidence and as long as it does not include statements solely made in the mediation.' [Citation.]" (Cal. Law Revision Com., Staff Draft of Final Recommendation on Mediation Confidentiality (Dec. 1996) p. 20.) CAJ argued that, without this change, the proposed statute "could be interpreted to override" another proposed statute "provid[ing] that evidence 'otherwise admissible or subject to discovery outside of mediation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation. [CAJ] also [argued] that just because a document *such as a photograph* was created for a mediation should not make that document inadmissible." (*Ibid.*, italics added.)

In recommending against the CAJ's proposed change, the Commission's staff stated: "CAJ's proposed revision would essentially undo . . . protection of documents prepared for the purpose of a mediation . . . . Loss of that protection could inhibit mediation participants from preparing such materials, which in turn could adversely affect the mediation process. Notably, of the sources commenting on the tentative recommendation, only the State Bar groups suggested reducing the existing protection of documents prepared for a mediation. Community Board Program made very clear that it would oppose such a move: 'We are especially concerned that all documentation relating to the preparation of a mediation, . . . be deemed inadmissible as evidence unless both parties agree that it should be disclosed.' [Citation.] Thus, the staff recommends against adopting the CAJ's approach. [¶] CAJ's comments did, however, cause the staff to consider whether [the proposed statute] should be limited to an expert's analysis or report. Perhaps the following wording would be better: [¶] . . . The communication, document, or writing [may not be admitted or disclosed unless it] is an expert's analysis or report, it was prepared for the benefit of fewer than all the mediation participants, those participants expressly consent to its disclosure, and the communication, document, or writing does not disclose anything said or any admission made in the course of the mediation. [¶] **Comment.** . . . [This provision] facilitates admissibility and disclosure of unilaterally prepared experts' reports materials, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion.

. . . [¶] This revision may alleviate some of the concerns raised by CAJ . . . . For example, it would allow a mediation participant to introduce *a photograph* that participant took for a mediation but later decided would be useful at trial. *Although in many instances it would be possible to take another photo, in some cases that could not be done, as when a building has been razed or an injury has healed.* Under the current version of [the proposed statute], the photo could not be introduced without the consent of all of the mediation participants, some of whom might withhold consent. The staff's proposed revision *would give the participant who took the photo control over whether it is used*, so long as it can be admitted without disclosing anything said or done or any admission made in the course of the mediation." (Cal. Law Revision Com., Staff Draft of Final Recommendation on Mediation Confidentiality, *supra*, at pp. 20–21, italics added.)

The Commission adopted the staff's proposal. Its final recommendation proposed a section stating that "[n]otwithstanding any other provision of this chapter" on mediation confidentiality, "a communication, document, or any writing as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, may be admitted in evidence or disclosed if . . . [¶] . . . [it] was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1119, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at pp. 441–442.) The accompanying comment explained that this provision "facilitates admissibility and disclosure of unilaterally prepared materials, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion." (*Id.* at p. 442.)

These materials show that, in making its recommendation regarding mediation confidentiality, the Commission specifically considered the discoverability of both expert reports and photographs and drafted its proposed confidentiality provisions to preclude discovery of such reports and photographs if they were "prepared for the purpose of, in the course of, or pursuant to, a mediation." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 438.) These materials also show that the Commission chose language expressly designed to give a mediation participant who takes a photograph for purpose of the mediation "control over whether it is used" in subsequent litigation, even where "another photo" cannot be taken because, for example, "a building has been razed or an injury has healed." (Cal. Law Revision Com., Staff Draft of Final Recommendation on Mediation Confidentiality, *supra*, at p. 21.) The Legislature adopted the Commission's recommendation and enacted the mediation confidentiality provisions in substantially the form the Commission proposed. As noted

above, section 1119, subdivision (b), provides that "[n]o writing, as defined in Section 250,"—which includes photographs and videotapes—"that is prepared for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery." Section 1122, subdivision (a)(2), provides that "a writing, as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if . . . [¶] . . . [it] was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation." The accompanying comment explains that this provision "facilitates admissibility and disclosure of unilaterally prepared materials, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1122 at p. 156.) The Court of Appeal's conclusion that photographs and videotapes taken for purposes of mediation are not protected under section 1119 is inconsistent with this legislative history.

The Court of Appeal's narrow interpretation is also inconsistent with the legislative history in several other respects. Before section 1119's passage, former section 1152.5 governed mediation confidentiality. Subdivision (a)(2) of former section 1152.5 provided that "no *document* prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible . . . or subject to discovery." (Stats. 1996, ch. 174, § 1, italics added.) In its final recommendation to the Legislature, the Commission proposed changing the term "document" to "document, or writing as defined in Section 250." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 438.) In discussing this proposal, the Commission stated: "[T]he term 'document' is not defined in the Evidence Code. . . . [¶] The Commission proposes to address this potential problem by incorporating Section 250's broad definition of 'writing' into the mediation confidentiality provisions." (26 Cal. Law Revision Com. Rep., *supra*, at pp. 428–429.) Again, the Legislature substantially followed the Commission's recommendation, broadly providing protection in section 1119, subdivision (b), for a "writing, as defined in Section 250." The Commission's official comment to section 1119 states that this change "expressly encompasses any type of 'writing' as defined in Section 250, regardless of whether the representations are on paper or on some other medium." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1119 at p. 149.) Thus, in passing section 1119, subdivision (b), the Legislature specifically intended to extend protection to all types of writings, including photographs.

At the same time, the Legislature also sought to expand protection for oral communications. Whereas subdivision (a)(2) of former section 1152.5 protected documents "prepared for the purpose of, or in the course of, or pursuant to, the mediation," subdivision (a)(1) protected only those oral communications and admissions "made . . . in the course of the mediation." (Stats. 1996, ch. 174, § 1.) The Commission's recommendation explained that, under these provisions, the protection for documents was "broader" than the protection for oral communications and admissions, and "[t]o encourage frankness in discussions relating to mediation, the Commission propose[d] . . . eliminat[ing] this distinction [by] protect[ing] 'evidence of anything said or of any admission made for the purpose of, or in the course of, or pursuant to,' the mediation." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 428.) Again, the Legislature followed suit by protecting, in subdivision (a) of section 1119, "evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation." The Commission's official comment explains that this section "extends [protection] to oral communications made for the purpose of or pursuant to a mediation, not just oral communications made in the course of the mediation." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1119 at p. 149.) The Court of Appeal's narrowing of the protection under section 1119 is inconsistent with these legislative efforts to expand protection.

More broadly, the Court of Appeal's construction is inconsistent with the overall purpose of the mediation confidentiality provisions. As noted above, "confidentiality is essential to effective mediation," (*Foxgate, supra,* 26 Cal.4th at p. 14) and to "ensur[e] confidentiality, [our] statutory scheme . . . unqualifiedly bars disclosure of" specified communications and writings associated with a mediation "absent an express statutory exception." (*Id.* at p. 15.) In making its 1997 recommendation, the Commission explained that the then existing "statutory scheme" regarding mediation confidentiality "ha[d] ambiguities that cause[d] confusion." (Recommendation on Mediation Confidentiality, *supra*, 26 Cal. Law Revision Com. Rep., at p. 414.) The changes the Commission recommended, which the Legislature adopted, were designed to "eliminate[]" these ambiguities in order "[t]o further the effective use of mediation" by ensuring the "candor" that "is crucial to [its] success." (*Id.* at p. 431.) Adopting the Court of Appeal's narrow construction of section 1119 would significantly undercut the Legislature's efforts to ensure the confidentiality necessary to effective mediation. For all of the above reasons, we conclude that the Court of Appeal erred in holding that photographs, videotapes, witness statements, and "raw test data" from physical samples collected at the complex—such as reports describing the existence or amount

of mold spores in a sample—that were "prepared for the purpose of, in the course of, or pursuant to, [the] mediation" in the underlying action are not protected under section 1119.[8]

■ The Court of Appeal also erred in holding that, although section 1119's protection applies to so-called derivative material "that is prepared for the purpose of, in the course of, or pursuant to, a mediation" (§ 1119, subd. (b))—such as charts, diagrams, information compilations, and expert opinions and reports—such material is nevertheless discoverable "upon a showing of good cause." As noted above, in reaching this conclusion, the Court of Appeal borrowed principles governing discovery of work product. However, discovery of work product is expressly governed by statute; Code of Civil Procedure section 2018, subdivision (b), provides that work product—other than writings reflecting an attorney's impressions, conclusions, opinions, or legal research or theories—is discoverable if "the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." Thus, the Legislature clearly knows how to establish a "good cause" exception to a protection or privilege if it so desires. The Legislature did not enact such an exception when it passed Evidence Code section 1119 and the other mediation confidentiality provisions.

■ However, the Legislature did expressly enact other exceptions to section 1119's protection. As explained above, section 1122, subdivision (a)(2), permits discovery of protected communications and writings that were "prepared by or on behalf of fewer than all the mediation participants" if "those participants expressly agree" to disclosure and disclosure would not reveal "anything said or done or any admission made in the course of the mediation." As also noted above, the language of this provision was designed to give a mediation participant "control over whether" something prepared for the mediation "is used" in subsequent litigation. (Cal. Law Revision Com., Staff Draft of Final Recommendation on Mediation Confidentiality, *supra*, at p. 21.) Subdivision (a)(1) of section 1122 establishes another exception; it permits discovery of protected material if "[a]ll persons who conduct or otherwise participate in the mediation expressly agree . . . to disclosure . . . ."

---

[8] Of course, that witness statements "prepared for the purpose of, in the course of, or pursuant to, a mediation" are protected from discovery under section 1119 does not mean that *the facts* set forth in those statements are so protected. Under section 1120, subdivision (a), because facts known to percipient witnesses constitute "[e]vidence otherwise admissible or subject to discovery outside of a mediation," those facts do not "become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation" through witness statements prepared for the purpose of, in the course of, or pursuant to, the mediation. Otherwise, contrary to the Legislature's intent, parties could use mediation "as a pretext to shield materials from disclosure." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1120 at p. 153.)

The Legislature established other exceptions for settlement agreements made or prepared "in the course of, or pursuant to, a mediation." (§§ 1123, 1124.) "Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]" (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505].) Here, there is no evidence of a legislative intent supporting the "good cause" exception the Court of Appeal majority read into the statute. On the contrary, as the dissenting justice in the Court of Appeal observed, that exception "is inconsistent with th[e] narrowly drawn exception[s]" the Legislature expressly established.

In *Foxgate*, we stated that "[t]o carry out the purpose of encouraging mediation by ensuring confidentiality, [our] statutory scheme . . . unqualifiedly bars disclosure of" specified communications and writings associated with a mediation "absent an *express statutory* exception." (*Foxgate, supra,* 26 Cal.4th at p. 15, italics added.) We also found that the "judicially crafted exception" to section 1119 there at issue was "not necessary either to carry out the legislative intent or to avoid an absurd result." (*Id.* at p. 14.) We reach the same conclusion here; as Judge Mohr observed, "the mediation privilege is an important one, and if courts start dispensing with it by using the . . . test [governing the work-product privilege], . . . you may have people less willing to mediate." Thus, the Court of Appeal erred in holding that so-called derivative material "that is prepared for the purpose of, in the course of, or pursuant to, a mediation" (§ 1119, subd. (b)), is discoverable "upon a showing of good cause."[9]

## DISPOSITION

The judgment of the Court of Appeal is reversed and, in light of the parties' settlement, the cause is remanded to that court with directions to dismiss the petition for writ of mandate and to discharge the peremptory writ. (See *Daly v. Superior Court* (1977) 19 Cal.3d 132, 151 [137 Cal.Rptr. 14, 560 P.2d 1193].)

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

---

[9] Given its conclusion, the Court of Appeal ordered issuance of a writ and sent the case back to the trial court without addressing Tenants' argument that many of the documents in question had not been "prepared for the purpose of, in the course of, or pursuant to, a mediation." (§ 1119, subd. (b).) We likewise express no opinion on this question. Moreover, in light of the parties' settlement, it is unnecessary to remand the case for consideration of this issue.