[No. B176030. Second Dist., Div. Eight. Feb. 15, 2005.]

TRAVELERS CASUALTY AND SURETY COMPANY et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ROMAN CATHOLIC DIOCESE OF ORANGE et al., Real Parties in Interest.

## COUNSEL

Drinker, Biddle & Reath, Ronald T. Labriola and Alan J. Lazarus for Petitioner Travelers Casualty and Surety Company.

Harris & Green, Gary L. Green; Horvitz & Levy and Peter Abrahams for Petitioner Industrial Underwriters Insurance Co.

Burnham & Brown and Gary R. Selvin for Petitioner Centennial Insurance Co.

Selman Breitman, Jeffrey C. Segal and Richard David Bremer for Petitioner Associated International Insurance Co.

Musick, Peeler & Garret and Susan J. Field for Petitioner Stonewall Insurance Company.

Arnold & Porter, John Quinn, James F. Speyer, John Lombardo; Mcdermott, Will & Emery and Margaret Warner for Petitioner Allianz Global Risks US Insurance Co.

Cortner McNaboe Colliau & Elenius, Elizabeth A. Klippi, Michael T. Colliau; Grippo & Elden and Laura K. McNally for Petitioner CNA Insurance Co.

No appearance for Respondent.

Kiesel Boucher & Larson, Raymond P. Boucher, Patrick DeBlase and Anthony M. DeMarco for Real Parties in Interest Plaintiffs in Clergy Cases I.

Latham & Watkins, G. Andrew Lundberg; Tobin & Tobin, Paul E. Gaspari; Callahan, McCune & Willis, Peter M. Callahan and Thomas M. Rutherford, Jr., for Real Party in Interest Roman Catholic Diocese of Orange.

## OPINION

**RUBIN, J.—** ■ The Roman Catholic Diocese of Orange (the Church) has been sued by numerous persons claiming they were the victims of childhood sexual abuse by various priests. Petitioners are the Church's liability insurers. They seek to vacate a written order by a settlement judge purporting to: (1) determine the good faith settlement value of the cases; (2) preclude the insurers from declaring a forfeiture of coverage should the Church settle without their consent; and (3) provide evidence of the insurers' bad faith for future use. As set forth below, we grant the petition because the settlement judge exceeded his authority by making factual findings and otherwise preparing a coercive order in violation of the fundamental principles governing mediation proceedings.[1]

## FACTS AND PROCEDURAL HISTORY

The Church is the principal defendant in an action brought by approximately 90 persons (plaintiffs) for alleged childhood sexual abuse by certain priests. Those cases known collectively as *Clergy Cases I* were coordinated within the Los Angeles County Superior Court with claims against dioceses in other parts of the state. In July 2003, Judge Peter D. Lichtman was appointed by stipulated order as the settlement judge. In addition to the parties, the Church's several liability insurers were included in a series of ongoing settlement discussions.[2] Although the Church's two primary insurers were providing a defense for the Church, they did so with a reservation of rights, leaving the insurers the option of withdrawing their defense and denying coverage of the plaintiffs' claims. The Church's five excess insurers also took part in the settlement discussions subject to a reservation of rights.

On April 30, 2004, Judge Lichtman issued an order for the parties and the insurers to participate in a "Valuation Hearing," after which the court would "render findings reflecting its determination of (i) the verdict potential for the sexual abuses cases if they were to proceed [to a jury trial], and (ii) the reasonable settlement value of such cases." According to the April 30 order,

---

[1] This court is aware of recently published news reports that these cases have settled. The parties have not contacted us regarding any such settlement and the insurers have not asked that we dismiss the petition or take any other action as a result of the parties' presumed settlement.

[2] The Church's primary liability insurers are Travelers Casualty and Surety Co. and Centennial Insurance Co. Five other companies acted as the Church's excess insurers: Industrial Underwriters Insurance Co., Associated International Insurance Co., CNA Insurance Co., Stonewall Insurance Co., and Allianz Global Risks US Insurance Co. We will refer to these seven companies collectively as either "the insurers" or "petitioners."

those findings were "intended to constitute an independent adjudication of liability and damages, based on an actual trial as that standard has been construed in California, and may be used by the parties or judicial officials in subsequent proceedings only to the extent lawfully permissible and for whatever legal relevance they may have." Judge Lichtman felt this method was authorized by his inherent powers to fashion new procedures and was warranted by the parties' inability to reach a settlement. Judge Lichtman attributed the failure to settle to the parties' widely divergent views of the value of the cases if they were to go to jury trial.

Judge Lichtman stated in his April 30 order that he had been guided by the case law developed under Insurance Code section 11580, subdivision (b)(2), which provides that an injured plaintiff who obtains a judgment against an insured defendant may then sue the insurer to recover the amount of that judgment. Citing to *National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434 [33 Cal.Rptr.2d 496] (*National Union Fire Ins.*), Judge Lichtman said that the "actual trial" requirement of the statute was satisfied by an independent adjudication of facts based on an evidentiary showing, during a process that does not create the potential for abuse, fraud, or collusion.[3] In order to satisfy this standard, Judge Lichtman ordered the parties to submit briefs and present live testimony and other evidence relating to the value of these and other sexual abuse cases during a two-day hearing. Judge Lichtman's "ultimate goal" was to "determine and advise the parties, based on an independent adjudicatory proceeding, [of] (i) the nature and extent of the injuries suffered by the various claimants, (ii), the probability that the [Church's] liability will be established, and (iii) the potential for damages—by verdict or settlement, resulting from any liability."

Petitioners objected to this proceeding, contending that Judge Lichtman had no authority to make any factual findings or determinations. When he overruled those objections, petitioners asked this court to vacate the April 30 order. On May 21, 2004, we issued a notice of intention to grant a peremptory writ in the first instance, stating that Judge Lichtman had no authority to *adjudicate* any aspect of the case, conduct an actual trial, or render any binding findings. We warned that Judge Lichtman's April 20 order

---

[3] We discuss the "actual trial" requirement in greater detail, *post*. In general, the rule demands proof of an insured defendant's liability to a third party plaintiff through some form of independent factfinding determination as a prerequisite to holding the defendant's insurance liable to either the insured or the third party for benefits under the policy. A variation of the rule was applied in *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 725–726 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*), where the court held that an insurance company defending its insured cannot be held liable on the policy where the insured settles without the insurer's participation or consent and without the benefit of an actual trial to determine its, and thus the insurer's, ultimate liability.

would be vacated unless he agreed to delete certain specified portions of his order, including any mention of adjudication, trials, and findings.[4]

By minute order dated May 24, 2004, Judge Lichtman said he would make the required changes to his order. The judge issued a modified order that same day, which deleted the language we found to be improper. As part of the modified order, Judge Lichtman said it had never been his intent to adjudicate or make findings establishing liability or damages. He still intended, however, to conduct the valuation proceedings and "provide the parties and the insurers with its determination(s) as to reasonable settlement and verdict values, based upon a showing of facts that do not create the potential for fraud, abuse or collusion."

The insurers objected that the modified order of May 24 still included provisions for Judge Lichtman to provide "adjudicated benchmarks" for the value of the sexual abuse claims, make findings reflecting his determinations of the verdict potential and settlement value of the cases, and allowed use of his determinations in subsequent proceedings as permitted by law. In response, we issued another order on May 24, 2004, suggesting that Judge Lichtman delete the references to "adjudicated benchmarks" and "findings reflecting." Judge Lichtman promptly did so. Petitioners objected again, contending that those two deletions were inadequate because Judge Lichtman's modified order still retained language concerning his intention to make determinations about the trial and settlement value of the cases, along with his intention to make his ultimate valuation order available for use in later proceedings, as permitted by law. Because Judge Lichtman modified the April 30 order that had been the subject of the petition, we dismissed petitioners' further objections as moot. We indicated in a footnote, however, that the deletions made by Judge Lichtman appeared to address the concerns initially raised in our May 21 order.

The valuation hearing took place on May 24–25, 2004. Counsel for the Church and plaintiffs introduced the testimony of several lawyers involved in other childhood sex abuse cases concerning the value of those claims, a video presentation of several of the plaintiffs describing their damages, and other evidence. Although counsel for the insurers attended the hearing and were invited to participate, they did not introduce any evidence and did not examine any of the parties' witnesses. On June 8, 2004, Judge Lichtman issued a lengthy written order (the Valuation Order) which set forth his determination of the reasonable settlement value of the *Clergy Cases I*

---

[4] The portion of the April 30 order that we specified for deletion ran from page 4, line 14 through page 7, line 15, and consisted of the discussion concerning the standards and procedures applicable to an "actual trial" for purposes of Insurance Code section 11580.

claims.[5] A substantial portion of the Valuation Order is devoted to Judge Lichtman's belief that the insurers had stymied all attempts at settling the cases through their threat of coverage forfeiture should the Church settle in an amount that had not been properly adjudicated. As part of this, Judge Lichtman described various actions or inactions by the insurers which he contended had derailed the parties' settlement efforts. In a separate section, he addressed the effect his order would have on the insurers in any further proceedings. According to Judge Lichtman, the valuation procedure he used satisfied the actual trial requirement of *Hamilton, supra,* 27 Cal.4th at pages 725–726.[6] He therefore intended the parties "to have limited use of this Court's order for the purpose of precluding the insuring carriers from announcing or declaring coverage forfeiture and for the parties['] support of arguments alleging bad faith. This Court intends to make this order **(save and except its settlement valuations)** available to the parties for subsequent open court hearings 60 days from today's date unless precluded by a reviewing court." (Original boldface.)

The insurers have petitioned this court once again, contending, as they did before, that Judge Lichtman's order exceeded his powers as a settlement judge and violated the confidentiality provisions governing reports of mediation proceedings. In response, we stayed Judge Lichtman's Valuation Order pending the outcome of this writ procedure.

## DISCUSSION

1. *Provisions Establishing Limits on Factfinding Powers and Coercive Conduct by a Mediator*

■ The nature of mediation proceedings and the limits on the use of information derived from such proceedings are set forth in Evidence Code sections 1115 through 1128.[7] Under section 1115, subdivision (a), mediation is defined as "a process in which a neutral person . . . facilitate[s] communication between the disputants to assist them in reaching a mutually acceptable agreement." Although mediation takes many forms and has been defined

---

[5] As set forth in our later discussion, Judge Lichtman's order was and remains subject to the statutory rules of confidentiality for a mediator's reports. We therefore refrain from describing the specifics of the Valuation Order. Instead, we describe the contents of that order in only the most general terms, and only as needed to give our discussion and ruling context. Accordingly, we will say nothing more about the valuation itself other than the fact that one was made.

[6] See footnote 3, *ante.*

[7] All further undesignated section references are to the Evidence Code. These provisions, which deal primarily with confidentiality restrictions and limitations on the later use and admissibility of information derived from mediation proceedings, are discussed in more detail, *post.*

in many ways, it is essentially a process where a neutral third party who has no authoritative decisionmaking power intervenes in a dispute to help the disputants voluntarily reach their own mutually acceptable agreement. (*Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 269 [11 Cal.Rptr.3d 610] (*Saeta*) [employee sued for wrongful termination and sought to compel deposition testimony of a retired judge who had taken part in a company sponsored three-person review panel; judge's claim that mediation confidentiality provisions applied and precluded his testimony was rejected because the review panel did not conduct a mediation designed to help the parties voluntarily and independently resolve their dispute but instead heard evidence and made and transmitted recommendations].)

■ Mediation generally falls into two categories. The first is traditional or classic mediation, where attorneys are not present, the mediator meets directly with the parties to facilitate negotiations, and the mediator is passive, expressing neither judgment nor opinion on the merits. The second is the type of mediation conducted as part of voluntary settlement conferences. In that form, lawyers are present and the mediator takes a more active role, often expressing an opinion on the merits but without authority to reach a decision. (*Saeta, supra,* 117 Cal.App.4th at pp. 269–270.)[8] Critical to either process is the concept of self-determination, leaving the parties in control of resolving their own dispute. Self-determination commits the parties to their settlement terms because they have made decisions by themselves instead of having a resolution imposed on them by a third party. (*Saeta,* at p. 270, quoting Kentra, *Hear No Evil, See No Evil, Speak No Evil: The Intolerable Conflict for Attorney-Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct* (1997) BYU L. Rev. 715, 718.) "The function of the mediator, therefore, is to

---

[8] The mediation conducted here appears to fall into this second category. The stipulated order by which Judge Lichtman was appointed stated that the matter had been transferred to him for settlement purposes only, set forth the various powers he was being granted, and acknowledged that he could communicate with the trial court "about the mediation process," as well as make reports on the "status and progress of the mediation." Judge Lichtman consistently applied the mediation confidentiality privileges throughout the process, and specifically invoked them in his May 24, 2004, order setting the Valuation Hearing. As part of that order, he stated that it was his intention to achieve a "mediated settlement." The parties have never contended that the Valuation Hearing was something other than a mediation, even though that mediation took place as part of a voluntary settlement process. On this record, we treat the Valuation Order as the result of a mediation proceeding that was governed by the rules applicable to mediations. We expressly decline to consider or clarify any differences that might exist between a mediation and voluntary settlement conference. (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 12, fn. 8 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*).) Therefore, our decision should not be construed as holding that all voluntary settlement conferences are mediations which are subject to the rules concerning the conduct of mediation proceedings. Instead, we apply the various mediation rules to the Valuation Order only because that order was the result of a mediation.

facilitate the parties to voluntarily reach their own agreement. [Citations.]" (*Saeta, supra,* at p. 270.)

The California Rules of Court provide guidelines that address the issues of voluntariness and coercion in the conduct of mediation proceedings.[9] Although these rules are not directly applicable to mediations conducted by sitting judges (rule 1620.1(d)), judges are "nevertheless encouraged to be familiar with and observe these rules when mediating, particularly the rules concerning subjects not covered by the Code of Judicial Ethics such as voluntary participation and self-determination." (Advisory Com. com., 23 pt. 2 West's Ann. Court Rules (2004 supp.) foll. rule 1620.1, p. 400.) A mediator must conduct the mediation in a manner that supports the principles of voluntary participation and self-determination by the parties. To that end, a mediator must, among other things, respect the right of each participant to decide the extent of his or her participation in the mediation, including the right to withdraw from the mediation at any time, and must refrain from coercing any party to join or continue participation in a mediation. (Rule 1620.3(a)–(c).) A "participant" is "any individual, entity, or group, other than the mediator taking part in a mediation, including but not limited to attorneys for the parties." (Rule 1620.2(c).) "[E]xamples of conduct that violate the principles of voluntary participation and self-determination include . . . providing an opinion or evaluation of the dispute in a coercive manner or over the objection of the parties, . . . and threatening to make a report to the court about a party's conduct at the mediation." (Advisory Com. com., 23 pt. 2 West's Ann. Court Rules (2004 supp.) foll. rule 1620.2, pp. 400–401.)

■ The Evidence Code's mediation provisions are also concerned with these issues. Even though there are no specific limitations on the format of a mediation, the process must still be conducted by a "neutral" person in order to facilitate communication between the parties and assist them in reaching a mutually acceptable agreement. (§ 1115; *Saeta, supra,* 117 Cal.App.4th at pp. 269, 271.) "[A] mediator should not have the authority to resolve or decide the mediated dispute, and should not have any function for the adjudicating tribunal with regard to the dispute, except as a non-decisionmaking neutral." (Cal. Law. Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2004 supp.) foll. § 1121, p. 154.) Instead, as the Law Revision Commission made clear, "the focus is on preventing coercion." (*Ibid.*)[10]

---

[9] All further rule references are to the California Rules of Court.

[10] The mediation confidentiality provisions found at sections 1115 through 1128 were proposed by the Law Revision Commission (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 418 [15 Cal.Rptr.3d 643, 93 P.3d 260]), and we therefore give substantial weight to the commission's own understanding of that legislation. (*Estate of Joseph* (1998) 17 Cal.4th 203, 216 [70 Cal.Rptr.2d 619, 949 P.2d 472].)

## 2. The Valuation Order Violated the Rules Prohibiting Factfinding and Other Coercive Conduct by a Mediator

In order to understand the intended effect of the Valuation Order and why it violated the prohibitions against factfinding and coercive conduct, it is first necessary to understand some of the legal rules governing the relationship between insurer and insured. Insurance Code section 11580 provides an injured plaintiff with the right to bring a direct action against a defendant's insurer which does not defend its insured once the plaintiff obtains a judgment against the defendant. An element of such a claim is a previous independent adjudication of facts based on an evidentiary showing during a proceeding that did not have the potential for abuse, fraud, or collusion. If such a proceeding did not occur, then the insurer cannot be liable in an action brought against it by the plaintiff. (*National Union Fire Ins., supra,* 27 Cal.App.4th at pp. 1444, 1447–1449.) A related, but analytically distinct, situation occurs when an insurer refuses to accept a reasonable settlement offer made within the policy limits of the insured. Such conduct breaches the implied covenant of good faith and fair dealing, with the insurer liable for all damages which proximately result, including a judgment in excess of the policy limits. (*Hamilton, supra,* 27 Cal.4th at pp. 725–726.) However, when the insurer is defending its insured, and the insured settles with a plaintiff without the insurer's consent or participation, and the settlement contains a covenant by the plaintiff not to execute in exchange for an assignment of the insured's policy rights against the insurer, the insurer has no obligation to pay. In essence, coverage is forfeited. Even though the insured defendant and the plaintiff entered a stipulated judgment and obtained a finding that their settlement was in good faith under Code of Civil Procedure section 877.6, absent a trial, there was no reliable litigated determination that the insured had suffered any damages at all. (*Hamilton, supra* at pp. 725–727, 730, 732–734.)

Judge Lichtman believed that the insurers had effectively thwarted any settlement because the Church feared that reaching a settlement without the insurers' participation and without a proper adjudication under *Hamilton* would put the Church at risk of forfeiting its coverage. To preclude the insurers from declaring such a forfeiture, he ordered that his determination as to the reasonable settlement value of the cases qualified as the adjudication required by *Hamilton.*[11] Additionally, because he believed the insurers were acting improperly, he directed that his written order could be used as evidence of the insurers' bad faith in any future proceedings. As set forth below, we believe Judge Lichtman exceeded his authority and our previous

---

[11] We express no opinion on the correctness of Judge Lichtman's analysis concerning the interpretation or applicability of *National Union Fire Ins.* or *Hamilton* to the insurers' conduct. We simply note their holdings in order to give context to the Valuation Order.

orders that he make no *findings* regarding the settlement value of the *Clergy Cases I*.[12] Additionally, he anticipatorily adjudicated certain legal issues that were not properly before him. The net effect was to render the mediation process coercive, at least as to the insurers.

By ordering that his settlement valuation constituted an actual trial for purposes of precluding a declaration of coverage forfeiture by the insurers, Judge Lichtman purported to make binding factual determinations. He also ruled that the Valuation Order could be used as evidentiary fodder for any future bad faith claim by the Church against the insurers. Finally, the order stated that it would become available to the parties for use in open court within 60 days, unless barred by this court. The net effect of these provisions was twofold: First, they purported to cut off the insurers' right to declare a coverage forfeiture in the event of an unauthorized settlement; second they dangled over the insurers' heads the threat of a bad faith action that was already fortified with the weight of a judge's findings. This left the insurers backed into a corner where the easiest way out would be to withdraw their reservation of rights and pay money to settle the cases. In short, the Valuation Order's factual findings and future use provisions were coercive. (Cal. Law. Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2004 supp.) foll. § 1121, p.154 [mediator has no authority to resolve dispute and has no function except that of a nondecisionmaking neutral]; rule 1620.3(a)–(c) [mediator must respect each participant's right to decide the extent of its participation and must refrain form coercion]; Advisory Com. com., 23 pt. 2 West's Ann. Court Rules (2004 supp.) foll. rule 1620.2, pp. 400–401 [warning against coercive opinions or evaluations or threatening to make a report to the court about a party's mediation conduct].) As a result, the court abandoned its designated role as a neutral facilitator without decisionmaking authority.[13]

---

[12] In our May 25, 2004, order, we dismissed petitioners' continuing objections that Judge Lichtman's modified order retained language concerning his intent to make settlement value determinations and to make his ultimate order available for use in later proceedings. In response to those objections, we said that Judge Lichtman's deletions of certain portions of his modified order addressed petitioners' concerns. Plaintiffs contend that this language somehow implicitly endorsed the disputed portions of the Valuation Order now before us. That comment was made in a footnote to an order in which we declined to reach petitioners' further objections because the original order setting the valuation hearing had been modified, making the petition moot. Our footnoted aside was therefore no more than dictum. Regardless, by ordering Judge Lichtman to delete certain language relating to the making of findings, as well as the portions of his order discussing the actual trial requirement under Insurance Code section 11580, we believe it was reasonably clear that any such findings were not allowed. Further, the parties never raised, and we therefore never decided, whether Judge Lichtman could order the later use in open court of his conclusions regarding the insurers' alleged bad faith.

[13] Equally, if not more troubling, is the fact that the Valuation Order identifies by name some of the plaintiffs and the priests who allegedly abused them and provides a factual summary of

Judge Lichtman contended that the Valuation Order was justified pursuant to the public policy of encouraging mediated settlements. The Valuation Order said that because the insurers effectively failed to participate in the mediation and otherwise acted improperly, a contrary ruling would shift the state's public policy from favoring settlements to favoring trials "when insuring carriers decide that it is in their best interests not to settle." Similar reasoning was rejected by the Supreme Court in *Foxgate, supra,* 26 Cal.4th 1. At issue there was whether the mediator could report to the court concerning the defendant's bad faith failure to participate meaningfully in a mediation session. The plaintiffs, who sought sanctions for that conduct, argued that an exception to the mediation confidentiality provisions was needed in order to prevent conduct that frustrated the policy of encouraging mediation. Relying on the Legislature's clearly expressed intent to promote frank and informal discussions by guaranteeing confidentiality, the Supreme Court held that the clear language of the statutes precluded such an exception. (*Foxgate, supra,* at pp. 14, 17–18.) If the mediation confidentiality rules still apply even where a mediation participant frustrates a mediated settlement by arguably sanctionable conduct, then, by parity of reasoning, the principles favoring voluntary participation over coercion should apply to an insurer whose supposedly limited and recalcitrant participation makes it unlikely that its insured will be able to settle. Preventing or punishing such conduct is not the job of a mediator. Instead, it is best left resolved by insurer and insured through an action for bad faith.[14]

Plaintiffs oppose the insurers' petition on three grounds: (1) the "actual trial" standards employed by the court in valuing the cases did not result in binding determinations; (2) the judge's inherent authority to control the proceedings permitted him to act as he did (Code Civ. Proc., § 128); and (3) the stipulated order appointing Judge Lichtman expressly granted him broad powers to

---

the plaintiffs' allegations. Although the Valuation Order states that the "settlement valuations" were not to be made available for use in open court, the facts concerning the named priests and their alleged victims come in another section of the report. At a minimum, it is unclear whether those portions of the report were included within the scope of the Valuation Order.

However, we have no problem with Judge Lichtman's creative use of a mini-trial evidentiary proceeding to help him evaluate the worth of the cases. Nor do we see anything wrong with him sharing his frank assessment with the parties and the insurers. Indeed, given the reported settlement (see fn. 1, *ante*), it seems fairly clear that the procedure adopted by Judge Lichtman and the assessment of the cases that he conveyed to counsel were instrumental in producing their resolution.

[14] We express no opinion as to the propriety of the insurers' alleged misconduct during the mediation and settlement process. We simply note that if, as Judge Lichtman apparently believes, they have acted in bad faith toward their insured, then they run the risk of liability for such conduct.

conduct the mediation through any settlement techniques he deemed appropriate. None of these contentions are well taken.

We first reject plaintiffs' contention that the order was not intended to and did not result in purported binding factual determinations. Although plaintiffs correctly note that the Valuation Order did not expressly make findings concerning either the Church's ultimate liability or plaintiffs' damages, the order specifically provides that Judge Lichtman's settlement valuations were the result of an actual trial that would preclude the declaration of a coverage forfeiture under *Hamilton*. The purpose of the actual trial requirement in *Hamilton* was to provide a reliable judicial determination that an insured defendant who settles with a plaintiff without the consent of the insurer in fact suffered damages as a result of that settlement. Absent that determination, in a case where the insurer was providing a defense and therefore might have prevailed at trial, there is no proof that the insured actually suffered any loss from the insurer's breach of contract. (*Hamilton, supra,* 27 Cal.4th at pp. 725–727, 730, 732–734.) If, as the Valuation Order states, Judge Lichtman was trying to satisfy *Hamilton,* it follows that he purported to find that the Church would lose if the matter went to trial.

██ We next consider whether Judge Lichtman's order was proper under his inherent authority to control the processes of his court. (Code Civ. Proc., § 128.) It was not. Whatever inherent authority Judge Lichtman possessed could not be exercised in a manner that was inconsistent with or which contravened a statute. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) The same is true of the stipulated order appointing him as settlement judge. Despite the broad grant of authority to use different settlement or mediation techniques, nothing in the order can or should be read to allow Judge Lichtman to exceed the neutral, non-factfinding role of a mediator.[15] (*People v. National Automobile & Casualty Ins. Co.* (2002) 98 Cal.App.4th 277, 290 [119 Cal.Rptr.2d 746] [where a statute requires a certain procedure or imposes certain limitations, an act beyond those limits is in excess of jurisdiction].)

The Church has opposed the petition on only one ground: because it declines to waive the mediation confidentiality privileges and allow disclosure of the Valuation Order at this time, it is premature to reach a decision as

---

[15] The stipulated order appointing Judge Lichtman as settlement and mediation judge stated that he could review the probable evidence, offer evaluations of the strength of the evidence, the applicable law, the amount of damages, and "take any other steps or apply any other settlement techniques he finds appropriate, including but not limited to order the appearance and presence of any party representative necessary to consummate a settlement." We believe this authorized Judge Lichtman to conduct the evidentiary hearing and provide the parties with his evaluation of the merits of the case and its proper settlement value. It did not, however, allow him to exceed the statutory limits on his role as a neutral mediator.

to whether the Valuation Order should be vacated or barred from some future use. We reject the Church's contention insofar as vacating the order is concerned. As discussed above, the order is coercive. Keeping it confidential for the time being does nothing to remedy that and is not grounds for leaving in place an unlawful order. As set forth below, however, the Church's position makes it unnecessary for us to reach the issues concerning the disclosure or future use of the Valuation Order.

## 3. *Mediation Confidentiality and Nondisclosure Rules*

 Evidence of admissions or anything else said in connection with the mediation process is not admissible or subject to discovery, and disclosure of that evidence "shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding . . . ." (§ 1119, subd. (a).) The same limitations apply to any writings prepared pursuant to or in connection with a mediation proceeding. (§ 1119, subd. (b).) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation shall remain confidential. (§ 1119, subd. (c).) "Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise . . . ." (§ 1121.) These protections continue to apply even after a mediation ends. (§ 1126.) Any reference to a mediation during "any subsequent trial" is ground for a new trial. (§ 1128.)[16]

Petitioners contend that the Valuation Order violated the mediation confidentiality statutes. Plaintiffs contend that section 1119 does not apply because, as Judge Lichtman stated in the Valuation Order, the insurers took no part in the Valuation Hearing and made no communications that could be protected. Plaintiffs contend that section 1121 does not apply because that statute's use of the phrase "parties to the mediation" limits its reach to the actual litigating parties. We need not reach these issues, however, because of the one ground upon which the Church has opposed the petition: based on its refusal to waive the mediation confidentiality privileges and allow disclosure of the Valuation Order at this time, it is premature to reach a decision as to whether the Valuation Order should be disclosed or barred from some

---

[16] Neither the parties, the insurers, nor Judge Lichtman dispute that their settlement discussions and the evaluation hearing were generally subject to these mediation confidentiality rules. In fact, Judge Lichtman consistently reminded the parties that those provisions applied to the proceedings. According to plaintiffs and Judge Lichtman, however, the circumstances of this case justify an exception to those provisions.

unknown future use.[17] We agree. Because the Church will not allow the Valuation Order to be disclosed at this time, it must remain confidential and may not be used without the Church's consent.[18]

## 4. *The Proper Remedy Is to Vacate the Valuation Order*

As mentioned before, we do not believe Judge Lichtman erred by providing the parties and the insurers with his evaluation of the plaintiffs' prospects for victory or the reasonable settlement value of their cases. To the extent the Valuation Order includes such information, it was proper. Judge Lichtman should not have characterized his settlement valuations as findings, however. Neither should he have purported to make findings concerning the actual trial requirements of *Hamilton* nor otherwise taken a position concerning whether the insurers' conduct was in bad faith. We therefore grant the petition, vacate the Valuation Order, and direct that it remain sealed.[19] Because we are opposed to the destruction of court records, and in order to ensure that a true and accurate copy of the Valuation Order be maintained, we decline to expunge that order as the insurers request.

---

[17] Because we grant the petition on this basis, we need not decide any issues relating to possible future uses of the Valuation Order or whether the Church, the plaintiffs, or the insurers might be able to consent to the use of the Valuation Order in the future.

[18] Should the Church ever consent to the disclosure or use of the Valuation Order, however, the issue will become ripe for adjudication at that time.

Even though we need not reach the issue, we believe that the plaintiffs' interpretation of section 1121 is wrong. While section 1121 states that no report by the mediator may be filed unless "all parties to the mediation" agree, that provision cannot be read narrowly to include only parties to an action, and exclude participating insurers. When interpreting this provision, we must give it a reasonable and commonsense reading that is consistent with the Legislature's apparent approach and which will not lead to an absurd result. As part of this task, we must read section 1121 together with the rest of the mediation confidentiality statutes and harmonize them. (*Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381, 1391, 1394 [74 Cal.Rptr.2d 721].) These provisions were intended to apply to participants, not just parties, including insurance company representatives. (See § 1119, subd. (c) [privilege applies to communications "by and between *participants* in the course of a mediation" (italics added)]; § 1122, subd. (a)(1) [writings made during course of mediation are admissible if "[a]ll persons who conduct or otherwise participate in the mediation expressly agree . . ."]; Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2005 supp.) foll. § 1122, p. 188 [general rule allows disclosure of mediation documents "only upon agreement of all participants, including not only parties but also . . . nonparties attending the mediation ([including] an insurance representative . . . )"]; accord, rule 1620.2(c) [a "participant" is "any individual, entity, or group, other than the mediator taking part in a mediation, including but not limited to attorneys for the parties."].) In light of the Legislature's apparent purpose of extending some aspects of mediation confidentiality to participants such as the insurers, not just the parties to an action, we construe the phrase "parties to the mediation" as used in section 1121 to include such participants.

[19] We also direct that copies of the Valuation Order in our own records remain sealed as well.

## DISPOSITION

For the reasons set forth above, let a peremptory writ of mandate issue directing the trial court to vacate and seal the Valuation Order. Petitioners to recover their appellate costs.

Cooper, P. J., and Flier, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 15, 2005.