Filed 1/18/24  Beal v. Beal CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DERK BEAL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DEREK BEAL,<br><br>        Defendant and Respondent. | A165234<br><br>(Contra Costa County<br>Super. Ct. No. MSC16-01997) |

Plaintiff Derk Beal appeals a judgment entered in favor of his brother, defendant Derek Beal,[1] on Derk's complaint for damages arising out of, among other things, Derek's alleged breach of oral agreements to (1) reimburse Derk for funds he deposited in a bank account held in Derek's name but in which the brothers comingled funds and (2) to share the profits from the sale of a house on which title was held solely in Derek's name but which the brothers allegedly purchased together for their mother.  Derk contends the trial court erred by concluding that the mediation confidentiality statutes (Evid. Code § 1115 et seq.)[2] barred his father's testimony regarding a meeting he had with the brothers to help them resolve

_____

[1] Due to the parties' shared surname, we refer to both by their first name for the purpose of clarity.

[2] All statutory references are to the Evidence Code unless otherwise noted.

their dispute, as well as the admission into evidence of a spreadsheet their father prepared in connection with that meeting. Derk also contends the court erred by applying the statute of frauds to bar his claim to a share of the proceeds from the sale of the house. We find no error and affirm the judgment.

## BACKGROUND

In January 2012, Derek opened the bank account over which the dispute centers. While the parties disagree as to the purpose of the account, it is undisputed that between 2012 and the closure of the account in 2015, both brothers made deposits and withdrawals on the account.

In August 2012, a house was purchased for the parties' mother, the down payment for which was made by check drawn on the shared bank account. The house was sold in 2018 and Derek retained all proceeds from the sale.

In October 2016, Derk filed the present action against Derek. As amended in January 2019, the complaint alleges, among other things, that Derek breached the oral agreements to reimburse Derk for funds he deposited in a bank account and to share with Derk the profits from the sale of their mother's home.

In October 2017, Derek was granted leave to file a cross-complaint. As amended, the cross-complaint alleged, among other things, that Derk breached an oral agreement to reimburse Derek for taxes Derek had paid on Derk's behalf.

Following a bench trial, the court found that neither brother had substantiated his claims. The court described the dispute as "an insoluble problem" and explained that "no one has prevailed in proving their case, because the overall accounting was essentially nonexistent. It was done on

2

the fly. I can't give anyone any satisfaction, because . . . I could never figure out who would get what." A written proposed statement of decision was issued by the court and subsequently adopted as the final statement of decision. It does not appear on the record before us that a formal judgment was entered. Nonetheless, we will treat the statement of decision, from which Derk noticed his appeal, as the judgment on appeal. (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 904 [appellate court has discretion to treat statement of decision as appealable final judgment].) Derek has not challenged the trial court's adverse ruling on his cross-complaint.

DISCUSSION

## I. Reimbursement of Funds Deposited in the Bank Account

### A. Background

Prior to trial, Derek sought to exclude testimony by his father, Robert Beal, about his attempts to mediate the dispute between Derk and Derek regarding the funds deposited into the bank account and to preclude Derk from admitting into evidence a spreadsheet Robert prepared as part of his effort to resolve the dispute. In support of his motion, Derek testified that he asked Robert to mediate the brothers' financial dispute as a neutral party. He submitted emails in which Robert confirmed that he agreed to act as a neutral party. Derek testified that, as part of the mediation, they scheduled a meeting in October 2014 at a hotel in Walnut Creek. A document entitled, "Rules of Order for the Beal Family Meeting," was sent by email to the parties before the meeting. Under the rules, each brother would have an opportunity to make an uninterrupted presentation on (1) the bank account, "how it was supposed to function and where it stands now," and (2) their understanding of the agreement to purchase the house for their mother. The

3

presentations would be followed by an "open debate" during which Robert intended to help clarify any misunderstandings regarding what was promised. Derek testified that, in connection with the mediation, Robert received "raw data" from each party from which he prepared a new reconciliation spreadsheet of the bank account, identifying and attributing each transaction to either party.

In opposition, Derk submitted a declaration claiming that the purpose of the family meeting "was to make an attempt to put a stop to the various name calling that was happening between [the brothers] both in person and in emails." Derk denied that they were "engaged in mediation. Nor were there any spreadsheets or reconciliation charts provided for or created for that family meeting." Robert submitted a declaration similarly describing the October meeting.

The court granted the motion to exclude from evidence any communication or writing that was made or prepared for the purpose of, or in the course of, the mediation, including the spreadsheet Robert prepared in connection with the mediation.

At trial, Derk claimed that he was owed $107,000 for funds he had deposited into the shared bank account that were withdrawn by Derek. His counsel acknowledged that the evidence admitted at trial was "convoluted at times." Derk claimed, however, they did not need to go through the bank account "line by line" because all of the funds deposited into the account in 2013 and 2014 were from his income.

Derek disagreed and argued that Derk had "failed to establish a sum certain that is owed from the account." Derek claimed that Derk "shifted the goalpost at least nine times during the course of this litigation, making it impossible to accurately calculate the outstanding amount from the [bank]

4

account."  Derek argued that the amount to which Derk testified was "based on his own understanding, without any substantial support behind it."

Ultimately, the court found, as set forth above, that Derk had not met his burden of proof to support his claim for breach of the alleged oral agreement to reimburse him for deposits to the bank account.

**B. Analysis**

Derk contends the court erred by excluding Robert's spreadsheet under section 1119.  He argues that "there was simply no evidence that the spreadsheet or any of the communications were created for the purpose of legally sanctioned or recognized mediation."  To the contrary, they "were simply created in attempt to solve the question that the Brothers had regarding the . . . account and to hopefully garner peace in the family."  We disagree.

The California Legislature and the judicial branch have broadly protected the confidentiality of information exchanged as part of a mediation. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415; *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 150.)  Statements, writings, or communications "prepared for the purpose of, in the course of, or pursuant to, a mediation" are not admissible at a civil trial and "shall remain confidential."  (§ 1119.)  In contrast, "[e]vidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation" is not "inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation."  (§ 1120.)  "[T]hese confidentiality provisions are clear and absolute.  Except in rare circumstances, they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected."  (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 118.)

5

Interpretation of the scope of the mediation confidentiality statutes presents a question of law subject to independent review by this court. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [the meaning of statutory language presents a question of law that we review de novo].) The trial court's decision to exclude evidence on the ground that it was made in connection with a mediation, however, is an evidentiary ruling subject to review for abuse of discretion. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 32 [rulings on the admissibility of evidence are reviewed for abuse of discretion].)

The trial court did not err in concluding that the parties engaged in mediation with Robert. Section 1115, subdivision (a), defines "mediation" as "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." The Law Revision Commission Comment explains, "To accommodate a wide range of mediation styles, the definition is broad, without specific limitations on format. . . . The definition focuses on the nature of a proceeding, not its label. A proceeding may be a 'mediation' for purposes of this chapter, even though it is denominated differently." Section 1115, subdivision (b) defines a "mediator" as "a neutral person who conducts a mediation." According to the Law Revision Commission Comment, "A 'mediator' may be an individual, group of individuals, or entity. . . . The definition focuses on a person's role, not the person's title." In *Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1139–1140, the court explained that a "neutral person" defined in section 1115 refers not to the mediator's mindset or subjective opinions, but to his or her lack of authority to decide the case. Section 1115 does not impose any limits on who may serve as a mediator. (See Knight et al., Cal.

Practice Guide: Alternative Dispute Resolution (The Rutter Group 2023) ¶ 3:73 ["The parties may agree upon someone known to both sides or may choose from panels of qualified persons recommended by various providers"].) We note that even under California Rules of Court, rule 3.855, which applies to court-ordered mediation, *not* the voluntary mediation at issue here, a personal relationship between the mediator and a participant must be disclosed, but the relationship does not require disqualification if no objection is lodged. (Cal. Rules of Court, rule 3.855(c).)

Substantial evidence establishes that Robert was asked to serve as a neutral party to facilitate the brothers' resolution of their financial dispute. The parties agreed to meet at a neutral location and the mediation was to be conducted in accordance with rules that were adopted to help ensure a productive debate. Robert was not given authority to resolve the dispute for the brothers. On these facts, the court reasonably concluded that the "family meeting" constituted a mediation.

The trial court also reasonably concluded that the spreadsheet was prepared by Robert in connection with the mediation. Derek testified that both he and Derk submitted "confidential information" to Robert and that Robert prepared his own spreadsheet based on that information. Robert described the spreadsheet as a "new tool" for resolving the dispute. The emails submitted to the court between Derek and Robert supported this testimony.

To be clear, Derek expressly stated that he was not claiming that the information the parties provided to Robert to make the spreadsheet should be excluded at trial. The court agreed and excluded only the new spreadsheet. The court confirmed that the "[u]nderlying data" was discoverable. For this reason, any possible error with regard to the exclusion of the spreadsheet

7

would also likely be harmless. Nothing in the court's ruling stopped Derk from attempting to substantiate his accounting based on the data submitted to his father.

Finally, Derk has made no attempt to demonstrate that, contrary to the trial court's finding, he satisfied his burden of proof based on the admissible evidence. Accordingly, we affirm the judgment insofar as it finds in favor of Derek on this claim.

## II. Proceeds from the Sale of the House

### A. Background

The undisputed facts establish the following: in 2012, a house was purchased for the parties' mother, title to the property was first held by Derek and his wife and later transferred into their family trust, Derk never held title to the house, and when the house was sold in 2018, Derek did not share any of the proceeds from the sale with Derk. The down payment and mortgage payments were drawn from the shared bank account. At trial, the parties disputed whose funds were used for these payments. Derek testified that he purchased the house for his mother and that he was solely responsible for the $60,000 down payment. Derk testified that he and Derek agreed to contribute equally to the purchase of their mother's house and that the down payment drawn on the shared bank account was his contribution. He acknowledged that they agreed Derek would be the owner "on paper" but that they also agreed that he would be a "silent partner" and he "would have 50 percent equity share in the property."

Both parties submitted emails purporting to support their claims. In December 2014, Derek sent an email to Derk and Robert that reads in relevant part, "Mom's house is not for sale and she has no interest in selling. Until that time, there is no action to take. Derk will continue receiving ½ the

8

rent minus expenses until the house is sold or I'm in a cash position to pay him back his down payment. There is no further need to go back and forth on this matter." A February 2015 email was also admitted, however, in which Derk wrote to Derek: "I will not argue your ownership in moms [sic] [h]ouse . . . its [sic] yours. However, I will not be responsible for any of the expenses associated with that house. You owe me $60K plus interest for the loan."

In closing argument, Derek's counsel argued that Derk's claim that he was entitled to a share of the proceeds from the sale of the house, as an owner of the property, conflicts with the written title and is barred by the statute of frauds. Derk's counsel argued that while the parties' use of the word "ownership" was reasonable, as laypersons they should not be held to its legal meaning. He suggested that the statute of frauds does not apply because what they "really had was an understanding in an oral contract about the profits from the house, not the ownership of the house." The court rejected Derk's argument, explaining, "With regard to the house, I would find plaintiff's testimony he believed he was an owner credible. He is . . . a sophisticated man. He knows when he says he is an owner what that means. And there is no writing. It is barred by the statute of frauds."

The court continued, "But beyond that, going to the heart of the matter with this [bank] account, plaintiff has not proven that he is entitled [to relief], even if I were not to find the statute of frauds [applied]. . . . [T]he accounting itself has not been substantiated. [¶] And when you pull out individual sections, it just makes the rest of the accounting problematic."

**B. Analysis**

The statute of frauds, located in Civil Code section 1624, reads in relevant part, "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be

charged. . . . [¶](3) An agreement. . . . for the sale of real property, or of an interest therein."

On appeal, Derk argues that the court erred in relying on the statute of frauds because "there were emails between the Brothers" in which Derek stated that Derk was entitled to Derk's "share of the profits" as well as to repayment of the down payment. No citations to the record are provided in support of this contention, which forfeits the argument. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.) Even if we were to overlook the forfeiture and assume that Derk intended to refer to the two emails discussed above, we disagree that they establish his entitlement to the down payment or to a share of the sale proceeds. As the trial court explained in its alternative ruling, given the manner in which the brothers treated the shared bank account, it was impossible to trace the source of the funds for the down payment to either brother, and the reference to receiving one-half the rent in the December 2014 email is not an agreement to share the proceeds from an eventual sale. Title was always held by Derek, not Derk. Under section 662, "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." The trial court did not err in finding that Derk failed to establish a beneficial interest in the property by clear and convincing evidence. (See *Toney v. Nolder* (1985) 173 Cal.App.3d 791, 796 [oral agreement to buy a house as equal partners in derogation of title must be shown by clear and convincing evidence].) Accordingly, the trial court properly entered judgment in favor of Derek on this claim.

**DISPOSITION**

The judgment is affirmed. Derek is to recover his costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SMILEY, J.*

* Judge of the Superior Court of California, Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.